## PEOPLE v. ROBINSON.

1. CRIMINAL LAW—HOMICIDE—TRIAL—REMARKS OF COURT.
   In a prosecution for homicide, the complaint that the trial
   court frequently criticized defendant's counsel in a man-
   ner calculated to disparage him in the eyes of the jury,
   *held*, without merit, although some of the remarks com-
   plained of were injudicious.

2. SAME—EVIDENCE—DIRECTED VERDICT.
   Defendant's contention that the undisputed testimony
   showed that deceased had robbed the defendant in her
   own home, and that she, to save her money and to ap-
   prehend the felon, shot him, and that, under such cir-
   cumstances, it was the duty of the trial court to direct
   a verdict of not guilty, *held*, not sustained by the record.

3. SAME—HUE AND CRY—RIGHT TO FOLLOW AND ARREST ROBBER.
   The ancient English law of hue and cry or *clamor popu-
   laris* with amercement of dilatory hundreds and award
   to the captor of a felon has never prevailed in this juris-
   diction, although the common-law right granted one robbed
   of money from his person to apprehend the robber or
   follow and cry for his arrest is retained.

4. SAME—SELF-DEFENSE CLAIM PREVENTS APPLICATION OF LAW OF
   HUE AND CRY.
   Where, under defendant's version of the shooting, the
   killing was not done to prevent an escape of the robber,
   but in self-defense, the old law of hue and cry, invoked
   by defendant, has no application.

5. SAME—TRIAL—DISCRETIONARY WITH COURT TO POSTPONE TRIAL
   TILL FOLLOWING DAY.
   Where the trial of the case consumed less than a day,
   and there was nothing about the evidence requiring resort
   to notes to recall all of it, it was discretionary with the
   trial judge to proceed or postpone the trial until the next
   day, and there was no error in his refusal of counsel's
   request to postpone until the following day in order that

On homicide to prevent criminal or unlawful acts, see notes
in 67 L. R. A. 529; 45 L. R. A. (N. S.) 71.

he might consult his notes and prepare his argument and requests to charge.

6. SAME—HOURS FOR HOLDING COURT NOT LIMITED.

Section 5, Act No. 369, Pub. Acts 1919, does not limit the hours for holding sessions of the court, and therefore the trial judge had a right to continue after four o'clock, and although, where a trial lasted less than a day, the trial judge might well have granted a reasonable time in which to prepare written requests to charge, it was not reversible error to let the trial move to its close without stopping for such purpose.

7. SAME—HOMICIDE—INFORMATION—VARIANCE.

Where the information charged the killing as of a certain day, and deceased did not die until shortly after midnight of that day, the claim that said variance is fatal, *held*, without merit.

8. APPEAL AND ERROR—ABSENCE OF TRIAL JUDGE FROM COURT ROOM NOT SHOWN BY RECORD.

Where there is no support in the record for the assignment · of error that the trial judge was not in the court room during the argument of defendant's counsel to the jury and had to be called from his private office to rule on an objection, the point will not be considered by the Supreme Court.

9. SAME—NO REVERSIBLE ERROR SHOWN BY RECORD.

Although counsel have a right, in argument, to state to the jury so much of the law as is claimed to be applicable to the facts, where the trial court held, during counsel's argument, that he had no such right, but in the next breath seems to have corrected the error, and the record does not disclose whether or not counsel was prevented from continuing said argument, the Supreme Court cannot find therein reversible error.

10. SAME—HOMICIDE—MANSLAUGHTER—TRIAL—INSTRUCTIONS.

Since defendant, by being found guilty of the crime of manslaughter, was acquitted of murder, if error was committed in instructing the jury relative to the crime of murder and the presumption of malice arising from a homicide, it was without prejudice.

228—Mich.—5.

11. SAME—FAILURE OF JUDGE TO INSTRUCT NOT CONSIDERED ON APPEAL WHERE NOT CALLED TO HIS ATTENTION.

The Supreme Court will not consider assignments of error based on the failure of the trial judge to give the jury instructions along lines not called to his attention at the time.

12. SAME—TRIAL—INSTRUCTIONS AS TO SELF-DEFENSE NOT SHOWN TO BE ERROR.

The contention that the charge of the court to the jury placed on defendant the burden of showing that the homicide was in self-defense, *held*, not sustained, although the charge was not as clear upon this subject as could be desired.

13. SAME—NO ERROR IN OMITTING TO INSTRUCT AS TO EFFECT OF TESTIMONY NOT GIVEN.

The contention that the court erred in omitting to instruct the jury that while the prosecution in a criminal case may show contradictory statements made by a hostile witness for the purpose of affecting his credibility, such impeaching testimony may not be considered by the jury as substantive evidence of the commission of the crime charged, is without merit where the record fails to disclose any impeaching testimony in the nature of substantive evidence of the commission of the crime charged.

14. SAME—TRIAL—INSTRUCTIONS—ERROR NOT REVERSIBLE WHERE JURY NOT MISLED.

Where defendant claimed to have been robbed by deceased and another, a reference to the robbery as larceny from the person by the trial judge, in giving an instruction to the jury, *held*, not reversible error, where said instruction applied as well to robbery as larceny from the person, and the jury could not have been misled thereby.

Error to recorder's court of Detroit; Jeffries (Edward J.), J. Submitted June 13, 1924. (Docket No. 90.) Decided July 24, 1924.

Mary Robinson, *alias* Mamie Robinson, was convicted of the crime of manslaughter, and sentenced to imprisonment for not less than 3 nor more than 15 years in the Detroit house of correction. Affirmed.

*Colombo, Colombo & Colombo,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Frank B. Ferguson,* Assistant Prosecuting Attorney, for the people.

WIEST, J.    Defendant was charged with the crime of murder, tried in the recorders' court for the city of Detroit, and convicted of manslaughter, sentenced, and by writ of error brings the case here for review.

About 10 o'clock the night of May 23, 1923, on Benton street in the city of Detroit, defendant shot Chester Monaghan, causing his death within a few hours.    Defendant operated a restaurant at 691 Benton street and, the night of the killing, claims she went into her living room on the way to a bedroom where she kept money in a trunk, to get change for a $5 bill, and in the living room found Monaghan and another man, both strangers to her, and asked them what they were doing there and went to the bedroom and came out with five $1 bills in her hand.    She testified:

"When I got back in my sitting room, they seemed to be still standing in the same place, seemed to be whispering to each other.    One of them seemed like he was drinking.    I said to them, 'You have to get out of here,' and I walked over to the door and opened the door.    The little one beckoned to the big one to go out.    The large one started out.    The little one, taking me by the hand, grabbed my hand and shoved me back over to the table.    When he did that, they both run out the door, the large one—

"*Q.* What happened to the money that was in your hand?

"*A.* He grabbed the money out of my hand.

"After he grabbed the money, he shoved me back and run out of the door.    The large one, he had been going out.    I went to run out behind him, and the smaller one ran by the large one and got out to the sidewalk, and I was just on the platform of the door then when he got out and ran back up in a corner

and grabbed something; I saw his hand go back like that, and I heard him hit up the side of the window right by the door, and he smashed the window, and I ran back in the house, I got my revolver out of the drawer, and started to go out the second time. I took my revolver because he had my money, and to defend myself until I came to an officer. So I called officer twice. I did not see an officer. I went out the way they went, but did not know I was so close behind them, but I was intending to watch them until I got to Hastings so I could put an officer on them. When I got out to about the second door, the large one stopped and backed himself up against an entrance way past Chester's tailor shop. The smaller one turned around in my face and says,—he cursed and says, 'Don't follow me; if you do I will kill you.' He ran his hand in his pocket. I says 'Don't come up on me like that.' He still leaned towards me. When he did that, with his hand in his pocket, I said 'Get back, get back.' He did not get back, so I shot. I shot one time, to scare him off. I did not intend to kill him or shoot him. When I shot him, he turned, took his arm up and walked right away from me."

It is claimed the court frequently criticized the conduct of counsel for defendant "in a manner calculated to disparage him in the eyes of the jury." We will mention but one incident. When the prosecutor was examining a witness the court asked: "Do you want the restaurant marked there by this photographer?" and the prosecutor answered: "Why, yes," thereupon the court said: "Well, mark it and go on. What are you waiting for? Afraid of Colombo?" to which the prosecutor replied: "No, I am not afraid of Colombo, don't worry about that." Counsel for defendant also turns this into a spurring of the prosecutor to assail him and thinks the hint was taken. The left-handed compliment to counsel inspired the undignified retort by the prosecutor, but that it made another man of the prosecutor, to defendant's disadvantage, passes belief.

We have examined the other remarks complained of and, while some of them were injudicious, to say they played any serious part in the determination of the grave questions involved would lend them an unmerited dignity.    It is claimed that,

"at the close of the people's case, the undisputed testimony showed that Monaghan had robbed the defendant in her own home, and that the defendant to save her money, and to apprehend the felon, shot him.    Under such circumstances, it was the clear duty of the trial court to direct a verdict of not guilty."

This overlooks the testimony of Morris Vinikoff that defendant said to Monaghan: "You ain't going to break any more windows in my house," hit him over the head with the gun and then shot him.

Defendant invokes the old law of hue and cry. The ancient English law of hue and cry or *clamor popularis* with amercement of dilatory hundreds and award to the captor of a felon has never prevailed in this jurisdiction, although we do accept the common-law right granted one robbed of money from his person to apprehend the robber or follow and cry for his arrest.    We spend no further time upon this subject, for under defendant's version of the shooting the killing was not done to prevent an escape but in self-defense.    The evidence was closed near the end of the court day, and counsel for the prisoner asked that the argument be put off until the next day in order that he might consult his trial notes and prepare his argument and requests to charge.    This was refused, and error is assigned thereon.    The trial of the case consumed less than a day and there was nothing about the evidence requiring resort to notes to recall all of it.    It was discretionary with the trial judge to proceed or postpone the trial until the next day and his refusal of the request discloses no error.

Section 5, Act No. 369, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 14725 [5]), does not limit the hours for holding sessions of the court and the trial judge had an undoubted right to continue after the hour of 4 o'clock. This is not questioned by defendant's counsel, but it is insisted that, when the trial judge intends to hold beyond the usual hour of adjournment for the day counsel should be warned thereof a sufficient time in advance to be able to prepare requests to charge. The brevity of the trial caught counsel without prepared requests to charge, and, considering the nature of the offense charged against defendant and the time of day, it might have been well to have granted counsel a reasonable time in which to prepare written requests, but we are not prepared to hold that it was reversible error to let the trial move to its close without stopping for such purpose. We must assume that counsel was aware of the nature of the defense and the legal questions necessarily involved and he should have come to the trial prepared for just such a possible situation.

The information charged the killing as of May 23, 1923, and, it is claimed, Monaghan did not die until shortly after midnight of that day, and such variance is fatal under the holding in *Chapman* v. *People,* 39 Mich. 357. The point is without merit. *People* v. *Sharac,* 209 Mich. 249.

We find no support in the record for the assignment of error that the trial judge was not in the court room during the argument of defendant's counsel to the jury and had to be called from his private office to rule on an objection. We, therefore, decline to consider the point.

It is claimed the court erred in refusing to allow counsel for defendant to state his views of the applicable law of the case to the jury. In *People* v. *Smith,* 177 Mich. 358, it was held that counsel have

a right, in argument, to state to the jury so much of the law as is claimed to be applicable to the facts. The rule is well settled but the difficulty we experience is whether this record discloses a violation of such right of counsel.    During the argument to the jury counsel for defendant stated :

"When a person is robbed, it is his duty to raise what is known as hue and cry."

The prosecutor objected, stating:

"If the court please, counsel has stated the law to the jury several times before, and is doing so again, and I want to object to it."

The court ruled:

"Well, he has a right to state the law if he wants to use it for an example, if he states what he thinks is the law and bases an argument upon the facts upon it.    He has no right to state what the court is going to tell the jury is the law, but he can tell the law to the jury for the purpose of exemplifying his defense.    *    *    *

"You have no right to state to the jury what the law is, except what you think the law is in reference to the application of the facts in the case, in presenting your theory.

"*Mr. Colombo:* Yes, I say I have the right to argue —in other words, the court is the sole instructor as to what the law in the case is, but counsel have the right to give you what they claim is the law.

"*The Court:* Now that is where you are absolutely wrong.    Now if you have any claim as to what the law is, you present it to the court in the form of requests to charge.    You have a perfect right to tell this court what you think the law is and what this court ought to charge the jury, but you have no right to argue to the jury what your theory of the law is, because it may not be that of the court, and this court does not recognize any idea of counsel giving it to the jury.    But you have a right to make a statement of what you think the law is with reference to a thing for the purpose of elucidating or making an

application of the facts in the case corresponding to the theory of your defense.

"*Mr. Colombo:* Will your honor hear me on that?

"*The Court:* No. Go on. You have heard me.

"*Mr. Colombo:* I say to you, gentlemen of the jury, that it was the right and duty of this woman after she had been robbed to raise a hue and cry, that is to call for the police and ask for assistance and follow this man."

The record does not disclose whether counsel was prevented from further presenting his views of the law in his argument and, while the trial judge was in error in holding that counsel had no right to state to the jury his theory of the law applicable to the facts, yet, in the same breath he seems to have corrected the error and, in the absence of a showing that the erroneous idea and not the right one governed, we cannot find reversible error.

Errors are assigned upon instructions to the jury relative to the crime of murder and the presumption of malice arising from a homicide. The points made are interesting, but the verdict acquitted defendant of the crime of murder and, therefore, she cannot ask for a reversal on account of such claimed errors. If the court was in error in the particulars claimed the result shows such errors were without prejudice.

Counsel assigns error upon the failure of the court to give the jury instruction along many lines mentioned but never called to the attention of the trial judge. It would not be fair to the trial judge to consider such assignments and thereby accord counsel for defendant the advantage of sitting down after the trial and studying out what he should have presented at the trial, and bring the same here for review as upon refused requests to charge. The charge, as given, covered the essentials and counsel cannot present here, by way of assignments of error, subjects he should have requested the trial judge to cover in the in-

struction to the jury.    It is claimed the charge placed
on defendant the burden of showing the homicide was
in self-defense.    While the charge was not as clear
upon this subject as could be desired we cannot say
that it placed upon defendant the burden of justify-
ing the homicide.    It is claimed:

"The court erred in omitting to instruct the jury
that while the prosecution in a criminal case may show
contradictory statements made by a hostile witness
for the purpose of affecting his credibility, such im-
peaching testimony may not be considered by the jury
as substantive evidence of the commission of the crime
charged."

The record fails to disclose any impeaching testi-
mony in the nature of substantive evidence of the
commission of the crime charged and the trial judge
might well have omitted making any reference at all
to the subject.

In giving instruction to the jury the court referred
to the claimed robbery as larceny from the person
and defendant urges this as error.    We find no re-
versible error in this for the instruction given by the
trial judge applied as well to robbery as larceny
from the person and the jury could have labored under
no misapprehension for the case had been tried on
the claim it was robbery, and one place in the charge
the court referred to it as robbery.

The assignments of error have been considered and
present no reversible error.    The conviction is af-
firmed.

McDONALD, BIRD, SHARPE, and STEERE, JJ., con-
curred with WIEST, J.    CLARK, C. J., and MOORE and
FELLOWS, JJ., concurred in the result.