# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 15, 2017

Plaintiff-Appellee,

v

No. 321352
Ingham Circuit Court
LC No. 13-000924-FH

VICKIE ROSE HAMLIN,

Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 322207
Ingham Circuit Court
LC No. 13-000917-FH

BARBARA ELLEN CARTER,

Defendant-Appellant.

_____

ON REMAND

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

We affirmed defendants' convictions in our original decision. *People v Hamlin*, unpublished opinion per curiam (Docket Nos. 321352 & 322207, decided December 10, 2015). Thereafter, the Supreme Court, in lieu of granting leave, remanded the matter to us for reconsideration in light of *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015). *People v Hamlin*, ___ Mich ___; ___ NW2d ____ (No. 153128, issued May 10, 2017). On remand, we again affirm.

At issue is whether the following questioning of defendant Carter by the trial judge pierced the veil of judicial impartiality:

> *Court.* Ma'am, [Brown] asked you politely to stop this behavior and leave, was that what you said?

-1-

*Defendant Carter.* I'm sorry?

*Trial Court.* Didn't you say she asked you to leave?

*Defendant Carter.* She asked me if I would detach myself.

*Trial Court.* Did you do that?

*Defendant Carter.* No, I did not.

*Trial Court.* What is the difference between asking you and commanding you? Does someone have to say the word, I command, in order for you to understand the police officer is directing you to do something?

*Defendant Carter.* Well, I mean—

*Trial Court.* That's what you've said here.

*Defendant Carter.* I was just saying it was a question.

*Trial Court.* It was a question? Did you answer the question?

*Defendant Carter.* I did answer the question.

*Trial Court.* What did you say?

*Defendant Carter.* I said that I wouldn't detach.

*Trial Court.* All right. So she asked you politely, and the question was, I guess, you say to leave, and you said you would not do that, and you think that she needed to command further?

*Defendant Carter.* I politely told her that I was staying.

*Trial Court.* You think - -

*Defendant Carter.* For reasons.

*Trial Court*: You think she needed to command you further to leave? What did she need to do beyond asking you politely to leave? I'm just asking because you sit here and told this jury you weren't commanded anything, and I thought maybe you had some distinction I am not aware of.

*Defendant*: Well, my only point was that it was a question, and I responded to her that I, that morally I could not detach myself because I was there for a purpose. I was . . . there because I believed in what I was doing.

In our original opinion, we concluded that the trial court's questions "did not evidence a deep-seated favoritism or antagonism that would make judgment impossible" and that, in any event,

any prejudice was cured by the jury instructions. *People v Hamlin, slip op* at 7. We did not, however, explicitly discuss the application of *Stevens*.

"[W]hether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *Stevens*, 498 Mich at 168. In *Stevens*, the Michigan Supreme Court described the following principles regarding claims of judicial misconduct:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id.* at 164.]

This case presents a close question. Certainly some factors weigh in favor of defendants, at least to some degree. The trial court's questions did not particularly elicit overly useful information and, while difficult to evaulate from a written record, the trial judge's tone and demeanor at some points is somewhat troubling. But, on the other hand, the questions to defendant Carter did seek to clarify an important point—the difference between a request and a command. And, even if the trial judge's comments in this area may have suggested some impartiality, the jury's request during deliberations for clarification on what constituted a lawful command indicates that the jury sought to seek a fair evaluation of that question. In response to the inquiry, the trial court, after consultation with the parties, gave the following instruction:

> Well, I don't know how much help I can be to you. Remember, I am going to give you the definition as best I can of the term lawful command, and please remember, as mentioned by counsel, words are construed in their normal, ordinary, common, accepted definitions under our laws. That's normally what it is unless a legislative intent is stated somewhat differently in the law, and it isn't in this one. So it's pretty clear that the term lawful, that word, means legal, warranted or authorized by the law. The word command means an order or a directive. A lawful command is an order or directive warranted or authorized by the law . . . .

Furthermore, the trial court's interventions were overall fairly limited. And some were either neutral or of possible benefit to defendants. Because the trial court's questioning was limited and cut both ways, this factor weighs against finding it reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.

This then brings us to the basis upon which we originally decided this issue: whether any potential prejudice was adequately addressed by curative instruction. In *Stevens*, the Supreme Court directed reviewing courts to consider the presence or absence of curative instructions, stating:

> Because "jurors are presumed to follow their instructions," [*People v* ]*Graves*, 458 Mich [476,] 486[; 581 NW2d 229 (2015)], the presence of a curative instruction does tend to cut against a finding of judicial bias. Despite this presumption, however, we note that a single, general instruction may not alleviate substantial judicial bias when judicial questioning of one party is excessive and imbalanced, as it was here. [*Stevens*, 498 Mich at 190.]

In *Stevens*, the jury was only instructed once at the close of trial with the general curative instructions to the effect that the court's questions and comments were not evidence, any judicial intervention was not meant to reflect a personal opinion, and the jury could only decide the case on the basis of the evidence. *Id.* The instructions here were more prevalent. The trial court explained in its introductory instructions to the jury:

> As the Judge in this case I have to make sure you have a fair and efficiently run trial. I have to make decisions about evidence, and I instruct you on the law that applies to the case. Take the law as the Court gives it to you.
>
> Now, the things I say are not meant to reflect my opinion about the facts of this case. You are the jury. You decide the matter. Your responsibility as our jury is to decide what the facts are. It's your job, no one else's.

The court continued, "Very rarely, but once in a while I'll ask a question or two myself. They are not meant to reflect my opinion here. If I ask a question it would just be to cover something that may not have been fully explored for your benefit."

Another instruction followed a comment made by one of the defense attorneys during closing argument. The attorney stated:

> You're going to get the jury instruction that says any comment from the court during the course of this trial, you have to disregard. If you think he's trying to sway one way or the other or if you have the feeling that it's designed that way, it doesn't matter, and that's what the law says, and I know the judge isn't trying to sway anybody's viewpoint here or his belief. He's just doing his job. I'm just doing my job.

After discussion off the record, the court clarified defendant Hamlin's closing argument about its questions:

> Inadvertently, Mr. Gaecke may have led you to have the impression that when I ask questions you can't consider any of that. The reality is that questions and answers that I get from witnesses are simply added by me to cover something that may need further explanation for your benefit. Do not think that because I ask questions, is what he's trying to tell you, that I have an opinion on whether -- on

the case one way or another. I want you to have your own individual opinions and not mine or any of the rest of us. I know he said disregard everything I said. That's not the way it works. It's just don't form an opinion by the fact that I ask questions.

And the issue was again addressed in the jury instructions:

> Questions put to witnesses are not evidence. My questions to witnesses are also not evidence. You should consider these questions only as they give meaning to the answers you receive. The answers of the witnesses supply the evidence, even on my questions.
>
> Now, my comments, rulings, questions, and instructions are not evidence and I have a duty to see that this trial is conducted under the law and to tell you the law that applies to this matter, but when I make a comment or give an instruction I'm not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this matter, pay no attention to that. You're the judges of the facts and you should decide the case from the evidence that you receive.

Thus, unlike *Stevens* where the jury received an isolated instruction at the end of the trial, here the jury was instructed about the trial court's questioning of witnesses at the beginning of trial, during the trial, and in the final jury instructions.

Accordingly, we conclude that, while the other *Stevens* factors may weigh slightly for or against finding judicial impartiality, the jury instructions themselves weigh heavily against the conclusions that the trial judge pierced the veil of impartiality. Defendants were not deprived of a fair trial.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly

-5-