*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAMONTE ODELL JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2019

No. 344168
Macomb Circuit Court
LC No. 2017-002877-FC

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a concealed weapon (CCW), MCL 750.227. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 17 to 50 years' imprisonment for his involuntary manslaughter conviction, two years' imprisonment for his felony-firearm conviction, and 5 to 10 years' imprisonment for his felon-in-possession conviction and CCW convictions. We affirm.

## I. FACTS

This case arises from an incident that occurred on June 20, 2017, at the Newport Apartments on 24194 Lotus Drive in Clinton Township, Michigan where the three-year-old victim shot himself while playing with a gun. On the day of the incident, defendant stood on the ground level at the apartment complex interacting with a woman who was on the second-floor balcony. The victim was playing with a gun and ultimately shot himself. April McKay, a resident, ran downstairs from her balcony. Defendant picked the victim up and held him until someone grabbed the victim because the victim's mother was panicking. McKay then grabbed the victim to apply pressure to his wound. The victim was rushed to the hospital. Defendant left the scene and no one found the gun. In an interview following his arrest, defendant told a detective that he did have a .22 caliber revolver in the pocket of his pants when he was at the apartment complex, but did not know what happened to the gun after the shot was fired.

## II. DIRECTED VERDICT—SECOND-DEGREE MURDER

Defendant argues that the trial court erred when it denied his motion for a directed verdict on the second-degree murder charge for which he was acquitted because there was insufficient evidence that he created a dangerous situation where death or serious bodily injury was likely. We disagree.

This Court reviews de novo a trial court's decision on a motion for a directed verdict. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). A challenge to the trial court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence, except that only the evidence presented before the motion for a directed verdict was made is considered. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). This Court must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the elements of the crime were proven beyond a reasonable doubt. *Id.*

Defendant was charged with second-degree murder. At trial, the prosecution argued that defendant committed second-degree murder on the theory that he knowingly created a dangerous situation where death or great bodily harm was likely. After the prosecution rested, the trial court denied defendant's motion for a directed verdict on the second-degree murder charge. The trial court believed defendant's conduct before the gun was fired established that he was reckless. Defendant looked in the victim's direction and indicated that he was not playing with a real gun. Defendant also took possession of a gun that he had no knowledge of how to responsibly handle or how to fire as he asked a resident of the apartment complex how to load the gun. There was no evidence that the gun was holstered. The trial court found that there was some evidence that defendant was wearing sweatpants at the time of the incident, although it was six hours after, and there was some testimony that he may have been wearing jeans. However, the trial court concluded that a rational trier of fact could find that defendant was wearing sweatpants and, even if the gun was clipped, that would be inherently dangerous, especially interacting with children. The jury subsequently acquitted defendant of second-degree murder, but convicted defendant of involuntary manslaughter.

Defendant contends that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence to convict him of second-degree murder. The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Defendant's claim is that there was insufficient evidence regarding the element of malice. Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. Malice can be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). Second-degree murder does not require an actual intent to harm or kill, but only "[t]he intent to do an act that is in obvious disregard of life-endangering consequences . . . ." *Goecke*, 457 Mich at 466.

A rational trier of fact could have concluded that defendant had an "[t]he intent to do an act that is in obvious disregard of life-endangering consequences" because defendant unlawfully

carried an unholstered gun and interacted with children without regard to the gun. *Id*. Defendant was seen jumping up and down, which could result in his dropping the gun, especially if he were wearing sweatpants. Therefore, the natural tendency of the manner in which defendant carried the gun was that it could fall out of his clothing; a child could pick the gun up as the victim did. *Goecke*, 457 Mich at 464. Additionally, defendant was not careful in handling the gun as he did not know how to unload the gun and had shot the gun outside the apartment complex two days before the incident. Defendant also indicated to McKay that the victim was not playing with a real gun. Following defendant's arrest, he admitted to carrying a .22 caliber gun in the pocket of his pants, but did not know what happened to it after the shooting. Therefore, defendant set in motion a force likely to cause death or great bodily harm. *Djordjevic*, 230 Mich App at 462. Accordingly, the trial court properly denied defendant's motion for a directed verdict.

However, even if the trial court erroneously denied defendant's motion for a directed verdict, such error is harmless. Defendant's claim of error may be dismissed because he was not convicted of second-degree murder. An erroneous denial of a motion for directed verdict is harmless when defendant is ultimately acquitted on the charge, even when the defendant is convicted of a lesser offense. *See People v Graves*, 458 Mich 476, 478-479; 581 NW2d 229 (1998) (finding it unnecessary to decide whether the defendant had been entitled to a directed verdict on a first-degree murder charge after the defendant had been acquitted on that charge and instead convicted of voluntary manslaughter). In *Graves*, our Supreme Court stated:

> [A] defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury. Such a result squares with respect for juries. Further, not to adopt this view is to countenance a misuse of judicial resources by automatically reversing an otherwise valid conviction. [*Id*. at 486-487.]

Nevertheless, *Graves* held that if "sufficiently persuasive indicia of jury compromise are present, reversal may be warranted in certain circumstances." *Id*. at 487-488. The *Graves* Court held that there may be sufficiently persuasive indicia of compromise when: "1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) . . . where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense." *Id*. at 488.

Here, defendant does not dispute that the involuntary manslaughter charge, of which he was convicted, was properly submitted to the jury. Accordingly, any error arising from the submission of the second-degree murder charge to the jury was rendered harmless when he was acquitted of that charge. *Id*. at 486-487. Still, it must be determined whether there was "sufficiently persuasive indicia of jury compromise." *Id*. at 487. Defendant merely speculates that there was a jury compromise. Defendant states:

> It is conceivable that some of the jurors believed the incident was an accident, and would have totally acquitted [defendant], and that others believed he was instead guilty of murder. In such a situation, it is thus possible the jury compromised their differences by agreeing to the middle ground – the involuntary manslaughter charge.

Defendant's argument is premised on the assumption that jurors do not follow their instructions. At the end of trial, the trial court instructed the jurors:

> In order to return a verdict it is necessary that each of you agrees [sic] on that verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind. Any verdict must represent the individual considered judgment of each juror.

Additionally, the trial court instructed, "If you believe that the Defendant is not guilty of second[-]degree murder, or if you cannot agree about that crime, you should consider the less serious crime of involuntary manslaughter." Jurors are presumed to follow their instructions. *Id*. at 486. As such, reversal is not warranted as there was not "sufficiently persuasive indicia of jury compromise" present. *Id*. at 487.

Defendant also contends that the trial court erroneously limited its accident instruction to the second-degree murder charge. "[B]ecause involuntary manslaughter is not an intent crime, accident is not a defense to this offense." *People v Hess*, 214 Mich App 33, 39; 543 NW2d 332 (1995). In *Hess*, this Court further explained:

> That is, "accident" is subsumed within the charge of involuntary manslaughter because the jury must consider whether the defendant's conduct was negligent, careless, reckless, wilful and wanton, or grossly negligent. Accordingly, in order to acquit a defendant in a circumstance where the jury is instructed on both murder and manslaughter and the defendant's theory is accident, the jury would have to conclude that the killing was accidental and that the defendant did not act in a criminally negligent manner. [*Id*. (citations omitted).]

Therefore, the trial court did not err in limiting its accident instruction to the second-degree murder charge.

### III. SENTENCE—PROPORTIONALITY AND REASONABLENESS

Defendant argues that his sentence of 17 to 50 years' imprisonment for his involuntary manslaughter conviction is an abuse of discretion because it is disproportionate and unreasonable considering the facts of this case and his prior record. We disagree.

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Foster*, 319 Mich App 365, 374; 901 NW2d 127 (2017) (citation omitted).

A minimum sentence within the guidelines range "is presumptively proportionate and must be affirmed." *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), rev'd on other grounds by 970 NW2d 388 (2019). Additionally, MCL 769.34(10) provides, "If a minimum sentence is within the appropriate guidelines sentence range, the [C]ourt of [A]ppeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's

sentence." See *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016) ("When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information.").

Because defendant's 17-year minimum sentence is within his sentencing guidelines range of 58 to 228 months (4.83 to 19 years), defendant's sentence is presumptively proportionate and must be affirmed. *Jackson*, 320 Mich App at 527. Furthermore, pursuant to MCL 769.34(10), defendant does not dispute that his sentence is within the recommended minimum guidelines range, and he does not contend that there was an error in scoring the guidelines or inaccurate information relied upon during sentencing. Therefore, defendant's sentence must be affirmed.

However, "[i]n order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). Defendant has failed to present unusual circumstances to overcome the presumption of proportionality. In his appellate brief, defendant highlights the facts of this case and his prior record. Defendant acknowledges that he did not have a right to possess a gun, but asserts that "[t]his was not the most egregious example of involuntary manslaughter that can be envisioned" as he did not intend to harm the victim, and his culpability was based only on his carrying a gun and the manner in which he had the gun in his clothing. Defendant also acknowledges that his prior record is serious and "not laudable," and that he has several prior felony convictions; however, he asserts that his prior convictions are for possession of controlled substances or theft-related offenses, and he has never been charged with any behavior involving physical violence. Nevertheless, defendant recognizes that he has two prior firearm convictions—CCW and receiving and concealing a firearm. Defendant claims that his most serious offense is likely an attempted third-degree criminal sexual conduct conviction from 2010 involving his then 15-year-old girlfriend.

Defendant has not provided any authority suggesting that these facts present unusual circumstances. At sentencing, the trial court recognized that defendant did not intend to harm the victim and that the shooting was an accident. However, the trial court noted that defendant was criminally reckless. Additionally, defendant does not acknowledge that his prior record was already taken into account when the guidelines were scored. At sentencing, the trial judge stated:

> And it appears that your life's work since you were age 18 has been criminal conduct. It's [sic] been primarily crime. To be sure, I've seen worse records of men your age. But what stands out is that you were on parole for weapons [sic] offense back in 2015 at the time that this occurred and you had no right to be carrying a firearm, as the Prosecutor pointed out.

Defendant was also subject to an enhanced guidelines range as a fourth habitual offender. As such, the facts cited by defendant do not amount to unusual circumstances that would render his presumptively proportionate sentence disproportionate. See *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (holding that the defendant's "employment, lack of criminal history, and minimum culpability, [we]re not unusual circumstances that would overcome [the]

-5-

presumption [of proportionality].") Accordingly, defendant has failed to overcome the presumption that his sentence is proportionate.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer