*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY MANCIEL,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2022

No. 335156
Wayne Circuit Court
LC No. 12-005217-01-FH

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a second jury trial, of first-degree home invasion, MCL 750.110a(2), and unarmed robbery, MCL 750.530, for which the trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 15 to 30 years for the home-invasion conviction, and 5 to 15 years for the unarmed robbery conviction, to be served consecutively. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises from the home invasion and robbery of Floyd Hosea at his Detroit apartment on February 12, 2012. The case has a lengthy procedural history. Defendant was originally convicted of first-degree home invasion and unarmed robbery at a jury trial in August 2012. In a prior appeal, after remanding for a *Ginther*[1] hearing on defendant's claims of ineffective assistance of counsel, this Court affirmed the trial court's determination that defendant's trial counsel was ineffective for failing to investigate and call two alibi witnesses, and accordingly, reversed defendant's convictions and remanded for a new trial. See *People v Manciel*, unpublished per curiam opinion of the Court of Appeals, issued December 30, 2014 (Docket No. 312804), aff'd *People v Manciel*, unpublished order of the Court of Appeals, entered August 14, 2015 (Docket No. 312804).

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

At defendant's second jury trial, which concluded on August 31, 2016, defendant was again convicted of first-degree home invasion. The victim, Floyd Hosea, who was 86 years old at the time of the offense, testified that he was sleeping in his apartment between 9:30 and 11:00 p.m. when he heard a noise at his door and then an intruder broke into his apartment by kicking open the front door.[2] The intruder hit Hosea in the face and demanded his money. The intruder took Hosea's pants that contained his wallet and money, and then left.

The principal issue at defendant's trial was the identity of the perpetrator. Hosea identified defendant as his assailant and explained that he was familiar with defendant because defendant lived in the same apartment complex and the two often socialized together when Hosea would offer defendant a beer while Hosea was sitting outside his apartment. Although the intruder's face was partially covered, Hosea explained that he recognized defendant's voice, and he also knew defendant's eyes and head. As Hosea explained, "I know him when I see him." Hosea testified that he was "real certain" about his identification, and he was "positive" that defendant was the intruder. Hosea told the responding police officer, Sergeant James Johnson, that he recognized the intruder and the officer confirmed that Hosea identified defendant as his assailant.

Defendant presented an alibi defense at trial. William Barber testified that on the night of the home invasion, defendant visited Barber's apartment in the same complex. Defendant arrived between 7:00 p.m. and 7:30 p.m., the two watched a movie together, and then Barber drove defendant to his work at a group home in Royal Oak. According to Barber, they left Barber's apartment between 10:00 and 10:30 p.m., and Barber's wife, Diane Sanders, went with them. Jeanetta Harris-Stevens, who described herself as a good friend of defendant whom she had known for 20 years, testified that she is affiliated with the group home where defendant worked, and was there on February 7, 2012, when defendant arrived for work between 10:30 and 10:45 p.m. Harris-Stevens said that after defendant completed his work at the home, she drove him to another location in Beverly Hills at 3:00 a.m., and he remained there until 8:00 a.m., when Harris-Stevens drove him home.

After defendant was again convicted at his second trial, he filed a motion for a new trial. He argued that defense counsel was ineffective for failing to call Diane Sanders, who could have also supported his alibi defense and who also could have refuted Hosea's identification of defendant as the perpetrator. Defendant further argued that defense counsel was ineffective for not calling the apartment manager, Barbara West, who defendant claimed could have refuted Hosea's testimony that he and defendant often socialized together. Defendant also presented evidence that Allen Aikens, whom defendant met in the Wayne County Jail, had confessed to committing the crimes against Hosea. Defendant argued that Aikens's confession was newly discovered evidence that entitled defendant to a new trial. Following an evidentiary hearing, the trial court rejected defendant's ineffective-assistance claims. It also found that defendant was aware of Aikens's purported confession before defendant's second trial concluded, and therefore,

---

[2] Hosea testified at defendant's first trial, but died before defendant's second trial. Therefore, his testimony at the first trial was read into the record at the second trial.

the confession did not qualify as newly discovered evidence. Accordingly, the court denied defendant's motion for a new trial. Defendant again appeals his convictions and sentences.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court abused its discretion by denying his motion for a new trial on the basis that defense counsel at defendant's second trial was ineffective for failing to call two witnesses, and failing to object to the court's jury instructions. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a defendant's motion for a new trial for an abuse of discretion. *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. Any factual findings by the trial court are reviewed for clear error. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). A finding is clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and law. *People v Haynes*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350125, issued 8/12/2021); slip op at 16, lv pending. The trial court's factual findings are reviewed for clear error, but "the court's determination of whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *Id*.

## B. ANALYSIS

Defendant argues that trial counsel at his second trial was ineffective for failing to interview or call as witnesses Diane Sanders and Barbara West. We disagree.

In *People v Leffew*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161797, issued 1/26/2022); slip op at 9, our Supreme Court recently reaffirmed the two-prong test from *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), previously stated in *People v Carbin*, 463 Mich 590; 623 NW2d 884 (2001), that a defendant must meet to successfully obtain relief when asserting a claim of ineffective assistance of counsel:

> First, the defendant must establish that counsel's performance was deficient. [*Carbin*, 463 Mich] at 600. In evaluating deficient performance we consider "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 US at 690. Second, the error must have prejudiced the defendant. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Reasonable probability means "a probability sufficient to undermine confidence in the outcome." [*Leffew, slip op* at 9.]

"Trial counsel is presumed effective and defendant must overcome a strong presumption that a trial counsel's performance was sound trial strategy." *People v Loew*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 352056, issued 1/13/2022); slip op at 10. This Court will not

use the benefit of hindsight to second-guess trial counsel's strategic decisions when assessing trial counsel's competence. *Id*. However, courts may not "insulate" review of trial counsel's performance by referring to it as trial strategy. As explained in *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012):

> Initially, a court must determine whether the "strategic choices [were] made after less than complete investigation," and any choice is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." [*Strickland*, 466 US] at 690-691. Counsel always retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*.

In other words, trial counsel is charged with the responsibility of "exercise[ing] reasonable professional judgment when deciding to forgo particular investigations relevant to the defense . . . ." *Trakhtenberg*, 493 Mich at 53.

Defendant has not demonstrated that trial counsel's decision not to call Sanders as a witness fell below an objective standard of reasonableness, or that counsel's decision was not based on a complete and thorough investigation. Defendant argues that Sanders could have also supported his alibi defense, and further, could have offered testimony that she spoke to Hosea after the offense and Hosea told her that he did not know the identity of the intruder. The record indicates that defense counsel was aware that defendant had suggested calling Sanders for these two purposes. Although defense counsel admitted that she did not interview Sanders, counsel explained that she had the benefit of Sanders's prior testimony from the *Ginther* hearing after defendant's first trial and her decision not to call Sanders as a witness was based on her review of that testimony. In particular, counsel was concerned that Sanders was asked about a conversation with Hosea, but she did not mention that Hosea made any statement about not knowing who broke into his apartment. Counsel further explained that she and defendant discussed the pros and cons of calling Sanders as a witness, including that her alibi testimony would be cumulative of Barber's testimony, and that her prior testimony could be used against defendant if she were called to offer any testimony about an alleged conversation with Hosea. It is apparent from the record that counsel's decision whether to call Sanders as a witness was strategic, and the record also discloses that counsel's decision was based on a reasonable investigation of what information Sanders could offer because counsel had a record of Sanders's prior testimony at defendant's first *Ginther* hearing, which counsel reviewed and discussed with defendant. Counsel had a reasonable basis for concluding that Sanders's proposed alibi testimony would be cumulative of Sanders's testimony, and that any proposed testimony regarding a conversation with Hosea could be undermined by the prosecution, given the omission in Sanders's prior testimony regarding any such conversation when asked. Defendant has not overcome the presumption that counsel's decision not to call Sanders as a witness was reasonable trial strategy.

Defendant also faults counsel for not calling Barbara West, the manager at defendant and Hosea's apartment complex, who defendant claims could have refuted Hosea's claim that he and defendant often socialized together. Defense counsel admitted that defendant had suggested calling West as a witness for this purpose. However, counsel explained that when she contacted West, West told her that she would not be able to testify in the manner that defendant had claimed. Specifically, when counsel asked West if she could testify that she had "never" seen defendant and

Hosea outside drinking together, West told her "she couldn't testify to that." According to counsel, West stated that "she did not pay attention to who was sitting outside every day." Counsel explained that she initially thought that West's testimony would have been important to defendant's defense, but once West told her that she could not testify that she never saw defendant and Hosea socializing together, she decided not to call her as a witness. In sum, the record discloses that defense counsel had a reasonable basis, formed after an investigation of West's potential testimony, for not calling West at trial. Defendant has not overcome the presumption that counsel's decision not to call West as a witness was reasonable trial strategy.[3]

Defendant also asserts that West could have testified that Hosea did not identify defendant as a suspect. However, West never claimed that Hosea denied knowing the intruder or identified someone else as the intruder. She merely testified that when she spoke to Hosea, he never shared with her any suspicions about who he thought broke into his apartment. Any testimony to this effect would have had little probative value regarding whether Hosea misidentified defendant as the intruder. Thus, counsel's decision not to call West for this purpose was not objectively unreasonable, and further, there is no reasonable probability that the outcome of defendant's trial would have been different had this insignificant testimony been presented.

## III. NEWLY DISCOVERED EVIDENCE

Defendant next argues that the trial court abused its discretion by denying his motion for a new trial on the basis of newly discovered evidence. We disagree.

In *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012), our Supreme observed that "[h]istorically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." In *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), the Court set forth four requirements that a defendant must meet to demonstrate that a new trial is warranted on the basis of newly discovered evidence:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) the new evidence makes a different result probable on

---

[3] We acknowledge defendant's argument that the trial court appears to have erroneously attributed the relationship that Harris-Stevens had with defendant to West. We agree that the trial court appears to have confused West with Harris-Stevens. The court's comments about the relationship between defendant and West were factually applicable to Harris-Stevens, not West. However, the nature of West's relationship with defendant was not material to trial counsel's decision not to call West as a witness. Rather, counsel did not call West because she was unable to testify in the manner suggested by defendant. Thus, counsel had a legitimate reason, grounded in the lack of helpful information that West could provide, for not calling West as a witness. As explained, defendant has not overcome the presumption that trial counsel's decision was objectively reasonable.

retrial. *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996); MCR 6.508(D).

The defendant bears the onus of establishing "the requisite showing" regarding the four elements of the *Cress* test. *People v Rao*, 491 Mich 271, 274; 815 NW2d 105 (2012).

Defendant argues that Aikens's confession to the crimes against Hosea is newly discovered evidence, entitling him to a new trial. The trial court's denial of defendant's motion was based mostly on its determination that Aikens's confession inculpating himself and exculpating defendant was not newly discovered. We agree.

Evidence is not newly discovered if either the defendant, or defense counsel, was aware of the evidence at the time of trial. *Id*. at 281. Even if the evidence was not available to the defendant at the time of trial, if the defendant was aware of the evidence, this will preclude a finding that the evidence was newly discovered. *Id*. at 282. In *Rao*, our Supreme Court reviewed caselaw that highlighted the link between the "newly discovered" and "reasonable diligence" requirements of parts one and three of the *Cress* test. *Id.* at 283. The Court synthesized the pertinent principles of law, stating:

> [U]nder *Cress*, when a defendant is *aware* of evidence before trial, he or she is charged with the burden of using *reasonable diligence* to make that evidence available and produce it at trial. A defendant who fails to do so cannot satisfy the first and third parts of the *Cress* test. [*Id.*]

The Court explained that what constitutes reasonable diligence will depend on the circumstances of each case, stating:

> When the evidence is claimed to be unavailable because a witness cannot be found, reasonable diligence may include requesting a continuance or postponement. See [*People v Purman*, 216 Mich 430, 439; 185 NW 725 (1921)]. When the evidence is claimed to be unavailable because of a witness's threat of perjury, reasonable diligence may include subpoenaing and questioning the witness under penalties of perjury. See *United States v Turns*, 198 F3d 584, 587 (CA 6, 2000). When the evidence is claimed to be unavailable because of its incompatibility with the defendant's trial strategy, reasonable diligence requires the defendant to choose between that strategy and the evidence. See [*People v Newhouse*, 104 Mich App 380, 386; 304 NW2d 590 (1981)]. And when the evidence is claimed to be unavailable because of a codefendant's assertion of the Fifth Amendment privilege, reasonable diligence might include requesting a severance or pursuing other procedural remedies to admit the testimony. See [*People v Terrell*, 289 Mich App 553, 568-569; 797 NW2d 684 (2010)]. The point is that the law affords a defendant procedural avenues to secure and produce evidence and, under *Cress*, a defendant must employ these avenues in a timely manner because evidence that is known to the defendant, yet not produced until after trial, will not be considered grounds for a new trial. [*Rao*, 491 Mich at 284.]

That a defendant must pursue and assert the appropriate procedural avenues to secure and produce evidence at trial is a rule "dictated by *Cress*," and consistent with the legal principles that form the foundation for that case. *Rao*, 491 Mich at 284. *Cress* is grounded in principles of both fairness and finality, as well as requiring a defendant to exercise care, diligence, and to be vigilant in securing and presenting evidence, while at the same time respecting the principle of finality that is essential to the administration of justice in Michigan. In *Rao*, the Court emphasized that "judicial sandbagging" is not tolerated, and a defendant's careless and neglectful actions in failing to secure, or withholding potentially material and probative evidence until after a judgment of conviction is entered, as well as engaging in gamesmanship, should not be rewarded. *Id*. at 285. In appropriate cases, however, "a judicial avenue must remain open for the rare case where, after new evidence is discovered, justice necessitates a new trial." *Rogers*, 335 Mich App at 194.

At the evidentiary hearing, conflicting evidence and testimony was presented regarding when defendant became aware that Aikens was claiming responsibility for committing the February 7, 2012 home invasion and robbery against Hosea. Defendant testified that he met Aikens while the two were both inmates in the Wayne County Jail. Aikens testified that defendant told him that he had been charged with crimes that he did not commit and, when defendant described the crimes to him, Aikens realized that defendant had been charged with crimes that Aikens actually committed. According to Aikens, he did not initially reveal this to defendant, but he eventually told defendant and agreed to cooperate to exonerate defendant. A series of letters and affidavits signed by Aikens confessing to the Hosea crimes were introduced at the evidentiary hearing. Some of the documents are dated "8/30," 2016, the day before defendant's second trial ended on August 31, 2016, and other documents, which were offered by defendant and included apparent photocopies of some of the August 30 documents, are dated "9/3" 2016. In addition, Aikens initially testified at the evidentiary hearing that he spoke to defendant during defendant's second trial and said that defendant knew at that time that Aikens had claimed responsibility for the crimes against Hosea. Later, however, Aikens claimed that he did not have this conversation with defendant until after defendant's second trial ended, although Aikens agreed that the conversation occurred before defendant was sentenced on September 16, 2016.

The trial court found that defendant was aware of Aikens's confession before defendant's second trial ended on August 31, 2016, and "did nothing to bring this alleged information to light." The court further found that defendant engaged in fraud upon the court by altering documentation to make it appear that Aikens did not confess until September 3, 2016, after defendant's second trial had concluded, and that defendant was clearly aware of Aikens's confession before being sentenced on September 16, 2016, but did nothing to bring this information to the attention of defense counsel or the court. Accordingly, the trial court found that Aikens's confession was not newly discovered, and therefore, defendant was not entitled to a new trial.[4] The trial court did not clearly err by finding that defendant was aware of Aikens's confession before defendant's second trial ended and did not pursue any procedural measures to bring that information to the trial court's attention.

---

[4] The court also found that the evidence presented at the evidentiary hearing raised questions regarding the integrity of Aikens's purported confession.

First, having reviewed the submitted documentation signed by Aikens, the trial court did not clearly err by finding that dates on the documentation were altered from an original date of August 30, 2016 to an altered date of September 3, 2016, in an effort to make it appear as though the evidence was not available until after defendant's trial ended on August 31, 2016. The spacing in the dates and the appearance of a faint "0" after the number "3" in the date on one of the documents supports the trial court's findings. The trial court had ample reasons for questioning the veracity of the documentation offered by defendant in support of his claim that he could not have learned about Aikens's confession until after the jury returned its verdict on August 31, 2016. Moreover, Aikens initially testified, quite clearly, that defendant was aware of Aikens's confession to the Hosea home invasion during the course of defendant's second trial. Indeed, Aikens explained that he knew this because defendant returned to the jail on the day that Barber testified and defendant complained to Aikens and other inmates at the jail that Barber appeared to be intoxicated during his testimony. According to Aikens, he had already told defendant about his confession before this happened. The record is clear that defendant did not pursue any procedures to make the trial court aware of this new information until months later. The record supports that defendant's actions related to Aikens's confession involve the type of gamesmanship that our Supreme Court in *Rao*, 291 Mich at 285, cautioned should not be allowed or tolerated. Because the trial court did not clearly err by finding that Aikens's purported confession was not newly discovered evidence, the court did not abuse its discretion by denying defendant's motion for a new trial with respect to this issue. Therefore, it is unnecessary to consider the remaining *Cress* factors.

## IV. JURY INSTRUCTION

Defendant next argues that reversal is required because of an erroneous nonstandard jury instruction given by the trial court during jury voir dire. We disagree.

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant concedes that there was no objection to the challenged jury instruction, leaving this issue unpreserved. Generally, claims of instructional error are reviewed de novo. *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019). However, an unpreserved claim of instructional error is reviewed for plain error affecting the defendant's substantial rights. *Id.* To be entitled to relief, a defendant must demonstrate that:

> (1) [an] error . . . occurred, (2) the error was plain, (3) the plain error affected substantial rights, and (4) the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *Carines*, 460 Mich at 763. An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* A defendant bears the burden of persuasion with respect to prejudice. *Id.* [*Walker*, 504 Mich at 276.]

A jury must be instructed so that it may correctly and intelligently decide the case. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). A trial court must properly instruct the jury so

that it may correctly and intelligently decide the case. This Court reviews jury instructions as a whole, rather than piecemeal, to determine whether any error occurred. *Id*. "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Blevins*, 314 Mich App 339, 353; 886 NW2d 456 (2016).

Defendant challenges the following instruction, which was given during jury voir dire:

> This is not Law and Order, this is not CSI, or NCIS, or Castle or any of those other television programs that you and I have come to enjoy, those are dramas, they are not real life. There may or may not be scientific evidence presented in this case. Scientific evidence in the real world, not fiction, is seldom if ever available let alone presented as evidence, and this includes DNA evidence, fingerprint evidence or ballistics or other firearm laboratory evidence.

We are not persuaded that the challenged comments constitute plain error. Defendant asserts that one of the weaknesses of the prosecution's case was the lack of physical or scientific evidence, and he contends that the court's comments minimized this weakness by undermining the importance or significance of such evidence. While the challenged instruction may not be a model of perfection, viewed in their entirety, the trial court's instructions set forth the issues to be tried and adequately protected defendant's rights. *Blevins*, 314 Mich App at 353. The challenged comments were rather brief, and they were made at the outset of jury voir dire, after addressing courtroom policies and immediately before discussing the jury's role in the criminal justice process. The remarks were not made in the context of any instruction directed at the jury's consideration of the evidence in the case, or at any party's theory of the case. Defendant complains that the remarks undermined the significance of a weakness in the prosecution's case, that being the absence of any physical or scientific evidence. However, the court's remarks were not directed at the specific facts of this case. Indeed, the court commented that "[t]here *may or may not* be scientific evidence presented in this case" (emphasis added). Further, we are not persuaded that the jury was somehow misled with regard to the prosecution's burden of proof. The trial court repeatedly informed the jury on the prosecution's burden to prove defendant's guilt beyond a reasonable doubt, including his identity as the assailant who committed the home invasion and unarmed robbery. While the trial court arguably made a misstep by stating that physical and scientific evidence "is seldom if ever available," considering the limited context in which that remark was made and that the trial court's remaining instructions properly advised the jury on how to consider evidence and the prosecution's burden of proof, we are satisfied that the instructions as a whole sufficiently protected defendant's rights. Accordingly, any error did not affect defendant's substantial rights and reversal is not warranted.

Defendant also argues that trial counsel was ineffective for not objecting to the trial court's remarks. Indeed, defendant faults counsel for her concession at the *Ginther* hearing that she did not review the transcripts from defendant's first trial, which would have allowed her to discover that similar remarks were made at that trial, thereby enabling her to prepare an appropriate objection at the second trial. For the reasons explained earlier, counsel reasonably may have decided that an objection was unnecessary considering the brief nature of the remarks and the limited context in which they were made. Moreover, to the extent that defendant believes that the trial court's comments may have affected the jury's consideration of evidence or undermined the

prosecution's burden of proof, the purpose of an objection would have been to obtain clarifying instructions on those points. But even without an objection, the trial court properly advised the jury on how to consider evidence and the prosecution's burden of proof. Thus, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial. Therefore, this ineffective-assistance claim cannot succeed.

## V. JUDICIAL MISCONDUCT

In a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief"), defendant argues that the trial court pierced the veil of judicial impartiality during its questioning of two police witnesses. We disagree.

"To preserve an issue of judicial impartiality, the party must object to the alleged improper conduct at trial." *People v Stevens*, 498 Mich 162, 180 & n 6; 869 NW2d 233 (2015); see also *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not object to any of the challenged conduct at trial. Because this issue is unpreserved, we review defendant's claims for plain error affecting defendant's substantial rights. *Jackson*, 292 Mich App at 597.

In determining whether a trial judge's conduct deprived a defendant of a fair and impartial trial, the pivotal inquiry is whether the judge's conduct pierced the veil of judicial impartiality. *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019). " 'A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.' " *Id*., quoting *Stevens*, 498 Mich at 171. This inquiry is dependent on the facts of each case and requires a weighing of the following factors:

> [T]he nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Swilley*, 504 Mich at 371.]

This list is nonexhaustive and other factors may be considered as relevant. *Id.* It is not necessary that every factor weigh in favor of a determination of impermissible partiality for a reviewing court to conclude that the judge's conduct improperly influenced the jury. *Id*. Rather, a reviewing court must consider a court's conduct under the totality of the circumstances; therefore, a court should not evaluate errors standing alone, but must consider the cumulative impact of the errors. *Id*.

### A. THE NATURE OF THE JUDICIAL INTERVENTION

The nature of the trial court's conduct is "the starting point to evaluate whether the conduct overstepped the line of judicial impartiality." *Stevens*, 498 Mich at 173. In *Swilley*, 504 Mich at 371-372, the Court discussed the type of conduct that can pierce the veil of judicial impartiality and improperly influence the jury:

Improper judicial conduct may come in many forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions. [Quotation marks and citation omitted.]

The intervention in this case involves the trial court's questioning of two witnesses. First, this type of judicial intervention is not itself inappropriate. MRE 614(b) expressly permits a court to interrogate witnesses, whether called by itself or a party. Such questioning can "produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173. But "the central object of judicial questioning should be to clarify," and it is inappropriate for a judge to exhibit disbelief of a witness, whether intentional or unintentional. *Id*. at 173-174.

The trial court's questioning of Sergeant Johnson was focused on understanding the police investigation after the home invasion, including what specific steps were undertaken to look for evidence. There is nothing in the trial court's questioning that is overtly inappropriate. Similarly, the prosecutor's and defense counsel's examination of Lieutenant Duda had caused confusion regarding whether the "back brace suspender combination" that Lieutenant Duda described was consistent with the suspenders that the police were looking for at defendant's apartment. The trial court's questioning of Lieutenant Duda was very brief, and was aimed at clarifying whether the witness's description of the "braces" that he recovered was consistent with the "suspenders" taken from Hosea's apartment and described in the search warrant. There was nothing overtly inappropriate about this line of questioning, which was very limited, and it did not exhibit partiality or provide a strategic advantage to either side.

## B. THE TRIAL COURT'S TONE AND DEMEANOR

As recognized in *Stevens*, a jury will turn to the trial court for guidance and instruction, and therefore, the jury is susceptible to even the most minimal indication of bias or prejudice exhibited by the trial court. *Stevens*, 498 Mich at 174. Therefore, a trial court should refrain from expressing its own opinions regarding the parties, and it must be aware of not only the substance of its words, but the manner in which they are stated. *Id*. at 175; *Swilley*, 504 Mich at 381. Accordingly, the trial court must refrain from using a controversial tone. *Id*. While this Court is not able to experience the tone and demeanor of a trial court first hand, the specific words that the court uses can convey hostility, bias, or incredulity. *Stevens*, 498 Mich at 176. The trial court's questioning of Sergeant Johnson and Lieutenant Duda can be characterized as benign, and there was nothing apparent in the manner of its questioning that suggested bias or prejudice on the part of the court. While the trial court's command to Lieutenant Duda to "[l]ook at the jury" reflected some frustration or exasperation, it did not reflect favoritism toward the prosecution or bias against defendant.

## C. THE SCOPE OF JUDICIAL INTERVENTION WITHIN THE CONTEXT OF THE TRIAL

In *Stevens*, 498 Mich at 176, the Supreme Court observed that in a longer trial, or one that involves more complicated issues, "it may be more appropriate for a judge to intervene a greater number of times than in a shorter or more straightforward trial." In *Swilley*, 504 Mich at 386-387, the Court further explained that "the focus is not solely on whether the trial *itself* was long or complicated," and that in addition to considering whether the trial itself was lengthy or involved

complicated issues, "[a] reviewing court must also evaluate the complexity of the particular issues that were subject to judicial inquiry." In the present case, defendant only challenges the trial court's questioning of two police witnesses. Because the questioning was minimal, and the questioning itself was not inappropriate and did not exhibit partiality against defendant or in favor of the prosecution, this factor does not support a conclusion that the court's conduct pierced the veil of judicial impartiality.

## D. WHETHER THE COURT'S COMMENTS WERE DIRECTED AT ONE SIDE MORE THAN THE OTHER

A finding of judicial partiality is more likely if the frequency and manner of the court's conduct is not balanced between the parties. *Stevens*, 498 Mich at 176-177. An appellate court will not hesitate to reverse if the trial court's questions and comments " 'were such as to place [it's] great influence on one side or the other in relation to issues which our law leaves to jury verdict.' " *Id*. at 177, quoting *People v Young*, 364 Mich 554, 558-559; 111 NW2d 870 (2015). In this case, the trial court's conduct was not directed at either party, but rather involved questioning of two witnesses in an attempt to clarify matters regarding the police investigation. There is nothing to suggest that the trial court was placing its influence in favor of one party as opposed to the other. Thus, this factor also does not support a conclusion that the court's conduct pierced the veil of judicial impartiality.

## E. THE EFFECT OF A CURATIVE INSTRUCTION

Whether the trial court gave a curative instruction is a relevant consideration in determining whether the trial court exhibited impermissible advocacy and partiality to the jury. *Stevens*, 498 Mich at 177. As explained in *Stevens*:

> Because "[i]t is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct. Depending on the circumstances, an immediate curative instruction may further alleviate any appearance of advocacy or partiality by the judge. [*Stevens*, 498 Mich at 177.]

However, there can be circumstances when a trial court so oversteps the bounds of judicial impartiality that an instruction will not alleviate or eliminate the appearance of partiality impressed upon the jury. *Id.* at 177-178. This factor is considered against the backdrop of the totality of the circumstances, and is weighed in conjunction with the other factors. *Swilley*, 504 Mich at 390.

During its preliminary instructions, the trial court advised the jury of its responsibility during trial as follows:

> My responsibilities as the judge in this trial are to make sure that the trial is run fairly and efficiently, to make decisions about evidence, and to instruct you about the law that applies to this case. You must take the law as I give it to you. Nothing I say is meant to reflect my own opinions about the facts of the case. As jurors, you are the ones who will decide this case. Your responsibility as jurors is

to decide what the facts of the case are.  This is your job, and no one else's.  You must think about all the evidence and all the testimony and then decide what each piece of evidence means and how important you think it is.  This includes how much you believe what each of the witnesses said.  What you decide about any fact in this case is final.

The court also advised the jury in its preliminary instructions:

I may ask some of the witnesses questions myself.  These questions are not meant to reflect my opinion about the evidence.  If I ask questions, my only reason would be to ask about things that may not have been fully explored.

The trial court also informed the jury that its evidentiary rulings "are not meant to reflect my opinions about the facts of the case."  Additionally, during its final instructions, the trial court again reminded the jury that "[m]y comments, rulings, questions, and instructions are also not evidence."  The trial court further explained:

It is my duty to see that the trial is conducted according to the law, and to tell you the law that applies to this case.  However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case.  If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion.  You are the only judges of the facts, and you should decide this case from the evidence.

In sum, it is apparent that the trial court repeatedly advised the jury throughout trial that it did not have an opinion about the case, that its questions and comments were not intended to influence the jury, and that it was solely up to the jury to determine the facts.

## F.  TOTALITY OF THE CIRCUMSTANCES

Considering the totality of the circumstances, the trial court did not pierce the veil of judicial impartiality. The challenged conduct is limited to the questioning of two witnesses, which is not itself improper.  Moreover, we disagree with defendant's contention that the questioning reflected partiality in favor of the prosecution or bias against defendant.  Rather, the questioning was intended to clarify matters related to the scope of the police investigation, and there is no overt indication that the questions were asked in a manner that demonstrated favoritism or partiality for or against either side.  Furthermore, to the extent that there was any risk that the court's questioning of witnesses could be perceived as reflecting the court's partiality, we are satisfied that the trial court's preliminary and final jury instructions adequately alleviated that risk and safeguarded defendant's right to a fair trial.[5]

---

[5] To the extent that defendant argues that trial counsel was ineffective for not objecting to the trial court's questioning of Sergeant Johnson and Lieutenant Duda, because the court was permitted to question the witnesses and because the questioning itself was not clearly improper, any objection

## VI.  SENTENCING ISSUES

Defendant argues that the trial court erred by imposing consecutive sentences without explaining why consecutive sentences were justified.  He further argues in his Standard 4 brief that resentencing is required because the trial court erroneously scored several offense variables (OVs).  We disagree with both arguments.

To preserve an issue regarding sentencing, "a defendant must raise the issue 'at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.' " *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018), quoting *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016), in turn quoting MCR 6.429(C).  Neither defendant nor defense counsel raised or addressed the issue of consecutive sentences at defendant's sentencing, and defendant also failed to raise this issue in a motion for resentencing or motion to remand in this Court.  Accordingly, defendant failed to preserve his claim that the trial court erred by imposing consecutive sentences.  Defendant preserved his appellate challenges to the scoring of OVs 1 and 2 by objecting to those scoring decisions at sentencing.  However, defendant did not object to the trial court's scoring of OVs 3, 10, and 16, leaving those claims unpreserved.[6]

"When a statute grants a trial court discretion to impose a consecutive sentence, that decision is reviewed for an abuse of discretion."  *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020).  When reviewing a trial court's scoring decision, the trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Jackson*, 320 Mich App 514, 518-519; 907 NW2d 865 (2017), rev'd in part on other grounds 504 Mich 929 (2019).  A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake.  *People v Dixon*, 333 Mich App 566, 571-572: 963 NW2d 378 (2020), lv pending.  This Court reviews de novo whether the facts found by the trial court meet the scoring conditions set forth in the applicable statute.  *Jackson*, 320 Mich App at 519.  An unpreserved claim of sentencing error is reviewed for plain error affecting defendant's substantial rights.  *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005).

### A.  CONSECUTIVE SENTENCES

A consecutive sentence may be imposed only if specifically authorized by statute.  *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012).  In this case, the trial court had discretion to impose consecutive sentences under MCL 750.110a(8), which provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served

---

would have been futile.  Trial counsel is not required to make a futile objection.  *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).  Moreover, because the trial court's preliminary and final jury instructions were sufficient to alleviate any perceived prejudice, defendant is unable to demonstrate that he was prejudiced by counsel's failure to object.

[6] Indeed, defense counsel expressly agreed with the trial court's scoring of OVs 3, 10, and 16. Therefore, defendant's appellate challenges to the scoring of these variables could be considered waived.  *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015); *People v Hershey*, 303 Mich App 330, 351; 844 NW2d 127 (2013).

consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

When a statute grants a court discretion to impose a consecutive sentence, the court is required to articulate on the record the reasons for each consecutive sentence imposed. *People v Norfleet*, 317 Mich App 649, 665; 897 NW2d 195 (2016). Indeed, courts must "justify each consecutive sentence" and "articulate their rationale for the imposition of each consecutive sentence so as to allow appellate review." *Id.* The trial court's rationale must signal to this Court that it believed that the "strong medicine of a consecutive sentence" was warranted. *People v Norfleet* (*After Remand*), 321 Mich App 68, 73; 908 NW2d 316 (2017). The trial court's reasons must be "sufficient to demonstrate an outcome within the range of reasonable and principled outcomes," and it must be apparent to this Court that the trial court considered the offenses and the offender and determined that consecutive sentences were appropriate. *Baskerville*, 333 Mich App at 290. Defendant argues that the trial court failed to satisfy these requirements because it gave no explanation for its decision to impose consecutive sentences when sentencing defendant in 2016.

We agree that the trial court did not directly explain its imposition of consecutive sentences at defendant's 2016 sentencing. However, when sentencing defendant in 2016, the court commented that it had previously sentenced defendant in 2012, it referenced its prior sentencing decision, and it explained that it was imposing the same sentences that it imposed originally. Under these circumstances, it is appropriate to consider defendant's original sentencing in 2012. At that proceeding, the court referenced that defendant was subject to consecutive sentencing and identified several factors that explained why it believed that "the strong medicine" of consecutive sentences was appropriate. In particular, the court noted that defendant's victim was 86 years old and stated that "it's unfathomable to me as to how someone could brutalize an elderly person like this." The court also noted that the victim had befriended defendant, and defendant betrayed his trust by violently breaking into his home and robbing him. In addition, the court commented on its obligation to protect the public, and on defendant's lengthy criminal record, involving seven felony convictions, which reflected poorly on defendant's potential for rehabilitation. We are satisfied that the record contains sufficient explanation for the trial court's rationale for imposing consecutive sentences, and the court did not abuse its discretion by imposing the consecutive sentences.

## B. SCORING CHALLENGES

Defendant challenges the trial court's scoring of OVs 1, 2, 3, 10, and 16. We find no error in the scoring of these variables, plain or otherwise.

MCL 777.31(1)(c) and (d) instruct that 15 points are to be assessed for OV 1 if "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon," and 10 points are to be assessed if "the victim was touched by any other type of weapon." We disagree with defendant's argument that there was no evidence that Hosea was touched with a weapon to support the trial court's assessment of 10 points for OV 1. At trial, Hosea testified that defendant "had an iron pipe; he didn't come in there barehanded." When asked if defendant ever touched him in any fashion, Hosea stated that defendant "hit at me with that stick, with that iron pipe he had." On

-15-

cross-examination, Hosea testified that he told the police "that he had an iron pipe and he hit me with it." This testimony supports the trial court's 10-point score for OV 1.

MCL 777.32 provides that 15 points should be scored for OV 2 if an offender possessed, among other things, a fully automatic weapon, 10 points if the offender possessed a short-barreled rifle or shotgun, 5 points if the offender possessed "a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon," and one point if the offender possessed "any other potentially lethal weapon." MCL 777.32(1)(b), (c), (d), and (e). The prosecutor argued, and the trial court agreed, that defendant's possession of the iron pipe supported a 1-point score for OV 2. Although defendant argues that the evidence did not support a finding that he possessed a potentially lethal weapon, Hosea's testimony that defendant was armed with an iron pipe, which can qualify as a potentially lethal weapon, was sufficient to support the 1-point score for OV 2.

Under MCL 777.33(1)(e), the trial court was required to assess 5 points for OV 3 if "[b]odily injury not requiring medical treatment occurred to a victim." Defendant argues that the evidence did not demonstrate that Hosea suffered an injury. However, Hosea testified at trial that he was injured when defendant hit him in the mouth with his fist. There is no indication that Hosea sought medical attention for this injury, but a 5-point score for OV 3 does not require medical treatment. The evidence supports the trial court's assessment of 5 points for OV 3.

Offense Variable 10, MCL 777.40, considers whether an offender exploited a vulnerable victim. Ten points should be assessed if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." Defendant argues that the evidence did not show that he exploited Hosea as an elderly person. We disagree. The evidence demonstrated that Hosea was 86 years old at the time of the offense. The trial court did not clearly err by finding that Hosea's age made him vulnerable because of his reduced ability to defend against an attack, and that defendant exploited that vulnerability trust by breaking into Hosea's apartment, physically attacking him, and taking his money. Thus, the trial court did not err by assessing 10 points for OV 10.

Finally, OV 16 addresses situations in which "property [is] obtained, damaged, lost, or destroyed." MCL 777.46(1). At the time defendant was sentenced, MCL 777.46(1)(c) provided that five points were to be assessed if "[t]he property had a value of $1,000.00 or more but not more than $20,000.00."[7] Defendant argues that the evidence did not show that he obtained property valued at more than $1,000. He further asserts that "[t]he value of the property was not an element of the offense" charged and the prosecution did not provide evidence proving its value beyond a reasonable doubt. First, Hosea testified at trial that defendant took his billfold, which Hosea said "had about one thousand five hundred dollars, something like that." Hosea later admitted that he was not sure of the exact amount, but he said "it was over a thousand dollars, I know that." Further, OV 16 is not limited to the value of property obtained; it also includes the value of property that is damaged or destroyed. At trial, Hosea testified that during the course of the home invasion, defendant kicked in two doors to Hosea's apartment. Sergeant Johnson

---

[7] MCL 777.46 was amended by 2018 PA 652, effective March 28, 2019. This same language appears in the amended statute, but now appears in MCL 777.46(1)(e).

confirmed that the front door to Hosea's apartment was damaged when he arrived at the scene. Hosea also testified that defendant broke one of the end tables in Hosea's bedroom with the iron stick. A preponderance of the evidence supports that property with a value of $1,000 or more but not more than $20,000 was obtained, damaged, or destroyed by defendant during the offense. Accordingly, the trial court did not err by assessing 5 points for OV 16.

Contrary to what defendant suggests, it was not necessary for the prosecution to prove, or for the jury to find, the value of property obtained, damaged, or destroyed beyond a reasonable doubt. In *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines were unconstitutional to the extent that they permitted trial courts to score the guidelines on the basis of facts not admitted by the defendant or found by a jury beyond a reasonable doubt. However, the Court remedied that violation by making the guidelines advisory. *Id.* at 365. Defendant was sentenced more than a year after *Lockridge* was decided. Because the guidelines were only advisory at the time defendant was sentenced, the trial court was permitted to score the guidelines on the basis of judicially found facts, and its scoring decisions were only required to be supported by a preponderance of the evidence. *People v Odom*, 327 Mich App 297, 305; 933 NW2d 719 (2019).

Finally, to the extent that defendant argues that defense counsel was ineffective for not objecting to the trial court's scoring of OVs 3, 10, and 16, because any objection to the scoring of these variables would have been without merit, defendant's ineffective-assistance claim cannot succeed. Counsel is not required to raise a meritless objection. *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan